## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

FRANK MULLINS,

                     Plaintiff,

     v.

FRANK'S INTERNATIONAL N.V.,
MICHAEL C. KEARNEY, MICHAEL E.
MCMAHON, ROBERT W. DRUMMOND, D.
KEITH MOSING, KIRKLAND D. MOSING,
MELANIE M. TRENT, ALEXANDER
VRIESENDORP, ERICH L. MOSING,
L. DON MILLER, STEVEN RUSSELL,
MELISSA COUGLE, and JOHN
SYMINGTON,

                     Defendants.

Case No. _____

JURY TRIAL DEMANDED

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Frank Mullins ("Plaintiff"), by his undersigned attorneys, for this Complaint against

Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief

based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Frank's International N.V. ("Frank's" or

the "Company") and the members of the Company's board of supervisory directors and board of

managing directors (collectively referred to as the "Board" or the "Individual Defendants" and,

together with Frank's, the "Defendants") for their violations of Sections 14(a) and 20(a) of the

Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17

C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed merger between Frank's

and Expro Group Holdings International Limited ("Expro") (the "Proposed Transaction").

2.      On March 10, 2021, Frank's entered into an Agreement and Plan of Merger with

Expro. Upon consummation of the Proposed Transaction, each share of Expro will be converted into

the right to receive 7.2720 shares of Frank's common stock (the "Merger Consideration"), with Expro and Frank's shareholders expected to own 65% and 35%, respectively, of the outstanding common stock of the combined company.

3.      In order to convince the Company's public common shareholders to vote in favor of the Proposed Transaction, on April 26, 2021, Defendants authorized the filing of a preliminary Form S-4 Registration Statement (dated April 23, 2021) with the SEC (the "Registration Statement"). As described below, the Registration Statement is materially incomplete and misleading in violation of Sections 14(a) and 20(a) of the Exchange Act. In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the Company's projections, (ii) the process that culminated in the Proposed Transaction, and (iii) the Company's financial advisor, Moelis & Company LLC ("Moelis"), in connection with the Proposed Transaction.

4.      The Proposed Transaction is expected to close in the third quarter of 2021 and the special meeting of Frank's shareholders to vote on the Proposed Transaction will soon be scheduled (the "Shareholder Vote").  Therefore, it is imperative that the material information omitted from the Registration Statement be disclosed prior to the Shareholder Vote, so Frank's shareholders can properly exercise their corporate voting rights.

5.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Frank's shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of

the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

8.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Frank's common stock trades on the NYSE, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## **PARTIES**

9.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Frank's common stock.

10.    Defendant Frank's is a Netherlands limited liability company with its principal offices located at 10260 Westheimer Rd., Houston, Texas 77042. The Company's common stock trades on the NYSE under the ticker symbol "FI." Frank's has a two-tier board structure, consisting of the Frank's Management Board and the Frank's Supervisory Board. The Supervisory Board supervises

and advises the Frank's Management Board in performing its management tasks.

11.     Defendant Michael C. Kearney is, and has been at all relevant times, the Chairman of Frank's Supervisory Board and the Company's President and Chief Executive Officer.

12.     Defendant Michael E. McMahon is, and has been at all relevant times, the Lead Supervisory Director.

13.     Defendant Robert W. Drummond is, and has been at all relevant times, a Supervisory Director of the Company.

14.     Defendant D. Keith Mosing is, and has been at all relevant times, a Supervisory Director of the Company.

15.     Defendant Kirkland D. Mosing is, and has been at all relevant times, a Supervisory Director of the Company.

16.     Defendant Melanie M. Trent is, and has been at all relevant times, a Supervisory Director of the Company.

17.     Defendant Alexander Vriesendorp is, and has been at all relevant times, a Supervisory Director of the Company.

18.     Defendant Erich L. Mosing is, and has been at all relevant times, a Supervisory Director of the Company.

19.     Defendant L. Don Miller is, and has been at all relevant times, a Supervisory Director of the Company.

20.     Defendant Steven Russell is, and has been at all relevant times, a Managing Director of the Company.

21.     Defendant Melissa Cougle is, and has been at all relevant times, a Managing Director of the Company.

22.     Defendant John Symington is, and has been at all relevant times, a Managing Director

of the Company.

23.     Defendants identified in paragraphs 11 through 22 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

<u>**SUBSTANTIVE ALLEGATIONS**</u>

**I.        Background of Frank's and the Proposed Transaction**

24.     Frank's is a global provider of highly engineered tubular services, tubular fabrication, and specialty well construction and well intervention solutions to the offshore and onshore oil and gas industry. The Company was founded in 1938 by Frank Mosing. Until Frank's August 2013 initial public offering (the "IPO"), the Company was owned solely by members of the Mosing family.

25.     In August 2013, Frank's became a publicly traded company using an "umbrella partnership C corporation," or "Up-C" structure; Frank's sole material asset at the time was its indirect interest in Frank's International C.V. ("FICV"), which was taxable as a partnership for U.S. federal income tax purposes. Mosing Holdings, LLC ("Mosing Holdings") held the remaining interests in FICV and matching preferred shares in Frank's.

26.     In connection with the Company's August 2013 IPO, Frank's entered into a Tax Receivable Agreement with FICV and Mosing Holdings (the "Original TRA").  The Original TRA generally provides for the payment by Frank's of 85% of actual reductions, if any, in payments of U.S. federal, state, and local income or franchise tax by Frank's in periods after the IPO as a result of (i) the tax basis increases from Mosing Holdings' exchange of interests in FICV and preferred shares of Frank's for shares of Frank's Common Stock, (ii) any deductions of interest deemed to be paid by Frank's as a result of any payments made under the Original TRA, and (iii) any additional tax basis arising from payments made under the Original TRA. Frank's would retain the benefit of the remaining 15% of these cash tax savings.

27.     The Original TRA also provides that, upon a change of control of Frank's, an

immediate lump-sum early termination payment is due in an amount equal to the sum of all potential future Original TRA payments, calculated using valuation assumptions contained in the Original TRA (the "Early Termination Payment"). By way of example, if the Early Termination Payment had been triggered on December 31, 2020, the estimated Early Termination Payment would have been approximately $68.0 million.

28.    In 2016, Mosing Holdings exchanged all of its interests in FICV and preferred shares in Frank's for common shares in Frank's. This exchange was a taxable exchange, resulting in gain for the Mosing family and an increased tax basis in the FICV assets for Frank's, which increased tax basis has the potential to reduce Frank's future U.S. federal, state, and local income tax.

29.    As of February 17, 2021, approximately 47% of the Company's common shares were collectively owned by members of the Mosing family. In connection therewith, the Mosing family has the right to recommend one director for nomination to the Supervisory Board for each 10% of the outstanding stock that they collectively beneficially own, up to a maximum of five directors. The remaining directors are nominated by Frank's Supervisory Board. Three members of the Mosing family are members of the Supervisory Board.

30.    On March 11, 2021, Frank's and Expro jointly announced the Proposed Transaction. The press release provided:

**Expro and Frank's to Combine to Create a Leading Full-Cycle Service Provider**

*Compelling Combination of Global Energy Services Leaders with Highly Complementary Capabilities*

*Shareholders to Benefit from Stock-for-Stock Transaction that Allows for Participation in Recovery Upside and Through-Cycle Resiliency due to a More Diversified Earnings Base*

*Transaction Brings Improved Profitability and Free Cash Flow, with Estimated Annual Cost Synergies of $70 Million*

*Combination Facilitates Faster, Returns-Focused Growth,*

*with Scope for Additional Investment in Future-Facing Technologies*

*Strong Pro Forma Financial Profile with No Debt, Approximately $285 Million of Cash*

*Companies to Host Conference Call Today at 1:30 PM GMT / 7:30 AM CT*

**READING, UNITED KINGDOM and HOUSTON, TEXAS, — MARCH 11, 2021 —** Expro Group, a privately-held international energy services company with market leadership in well access and well flow optimization, and Frank's International (NYSE: FI), a global oil services company that provides a broad range of highly engineered drilling and completions solutions and services, today announced a definitive agreement under which the companies will combine in an all-stock transaction. Upon the closing of the transaction, Expro shareholders will own approximately 65% of the combined entity, with Frank's shareholders owning approximately 35%.

The combination brings together two companies with decades of market leadership, best-in-class safety and service quality performance, exceptional talent and global capabilities in well construction, well flow management, subsea well access, well intervention and production services. With a broad range of complementary, highly specialized equipment and services, the combined company will provide customers with cost-effective, innovative solutions across the well lifecycle, driving a stable, diverse revenue mix. The combined company will have a strong, debt-free balance sheet, robust order backlog, more than $1 billion of pro forma annual revenue as well as an ability to generate through-cycle free cash flow and growth.

"This transaction unites two established industry players to create a leading service provider with an extensive portfolio of capabilities across the well lifecycle," said Mike Jardon, Chief Executive Officer of Expro. "Together, Expro and Frank's will be better positioned to support our customers around the world and navigate industry cyclicality. This business combination also allows us to rationalize facilities and other support costs, optimize business processes, capitalize on profitable growth opportunities and create value for shareholders of both companies, particularly as the environment for international projects continues to improve."

Mr. Jardon continued, "We expect the combined company's scale, debt-free balance sheet and cash flow outlook will allow us to accelerate growth. This will be achieved through an enhanced ability to deliver integrated customer solutions and increased investments in digitalization, autonomous operations and other technologies. The combination of Expro and Frank's also allows us to advance our commitment to a lower carbon future, which is underpinned by our goals to maximize efficiency and improve our products and services to help the Company and its customers lower emissions. Finally, this transaction will unite two of the premier teams in the industry, and better allow us to attract, retain and develop the best workforce. We look forward to combining the strengths of our businesses and teams and building upon both companies' proud track records of providing safe, reliable and cost-effective solutions and best-in-class service quality to Expro's and Frank's many customers."

"Expro and Frank's share complementary cultures, values and competencies – all of which support a smooth integration for our customers and employees," said Mike Kearney, Chairman, President and CEO of Frank's. "After undertaking a thorough process to consider a range of strategic alternatives, we are confident that this transaction presents a compelling opportunity for Frank's shareholders to benefit from value creation led by returns-focused growth. The combination brings scale, improved profitability and free cash flow and, together, we will be better positioned for the industry recovery, of which we are in the early stages. We are extremely proud of Frank's history and the talented individuals of Frank's who helped build and sustain our great company. We expect this combination to create career development and advancement opportunities for many of our employees as part of a more balanced and stronger combined organization."

**Multiple Avenues for Value Creation**

- **Broad offering that spans the well lifecycle provides through-cycle resilience and ability to better capture cyclical recovery upside**: The combined company's expanded product offerings will enable it to perform well across the oilfield cycle – generating strong and stable cash flow – and positioning it to capitalize on upside driven by a recovery. The combined company will offer a balanced portfolio of services and solutions that meet customer needs across well construction, completions, production optimization and de-commissioning, in both onshore and offshore markets. Its diverse revenue streams are supported by a global operating footprint and a blue-chip customer base. Together, Expro and Frank's will generate approximately one-third of the combined company's revenue from customers' production optimization efforts. At December 31, 2020, Expro's backlog was approximately $1 billion.

- **Establishes well lifecycle leadership across enhanced geographic footprint, including key international markets:** The combined company will have leading positions in large addressable markets across the well-lifecycle and customer spend, with operations in more than 50 countries and across six continents, including the world's most prolific oil and gas basins. Expro's established position in North Africa, the Middle East and Asia markets will provide significant opportunities to expand Frank's presence in these attractive regions. Similarly, the combined company will leverage Frank's strong position in drilling and completions services throughout the Americas to deliver integrated customer solutions.

- **Robust technology and innovation pipeline to aid sustainability goals:** Both companies are committed to continuing their development of technologies that will drive enhanced sustainability and enable the combined company to capitalize on industry trends geared towards digitalization, automation and a lower carbon future. The combined company will remain committed to achieving a 50% reduction in carbon intensity by 2030, and net zero $CO_2$ emissions by 2050, protecting the environment while providing core products and services that help make energy affordable for people around the world and optimize participation in the energy transition.

**Strong Balance Sheet and Synergies Bring Significant Degree of Operational Flexibility and Strategic Optionality**

- **Significant and achievable synergies:** The combined company is targeting approximately $55 million of annual run-rate cost synergies to be achieved in the first twelve months, ramping up to $70 million of annual cost savings within 36 months. The companies have also identified significant growth opportunities through complementary customer relationships and operating footprints, earlier visibility into customer requirements, increased time on rig and greater exposure to the full life of the field.

- **Strong balance sheet and cash flow before synergies:** The combined company will have a debt-free balance sheet and pro forma revenue and adjusted EBITDA, excluding identified synergies, of more than $1 billion and $107 million, respectively, based on the twelve months ended December 31, 2020. At closing, the combined company is expected to have approximately $285 million of cash. To supplement available liquidity, the companies expect to complete syndication of a revolving credit facility, which will be available for direct borrowings and letters of credit, of up to $250 million prior to the close of the transaction.

**Proven Leadership Team**

Upon closing of the transaction, Expro Chief Executive Officer, Mike Jardon, will become Chief Executive Officer of the combined company and will be a member of the Board of Directors. Mike Kearney, Frank's Chairman, President and Chief Executive Officer, will serve as Chairman of the combined company. Quinn Fanning will serve as Chief Financial Officer of the combined company, and the remainder of the new leadership team is expected to include representatives of both companies.

In addition to Mike Kearney and Mike Jardon, the remainder of the combined company's nine-member Board of Directors will comprise five additional directors appointed by Expro and two additional directors appointed by Frank's.

The combined company will be operationally headquartered in Houston, Texas, and will maintain a significant operating presence in Lafayette, Louisiana, Aberdeen, Scotland and other key locations around the world. The principal executive office of the combined company will remain in the Netherlands.

**Transaction Terms**

Under the terms of the agreement, which has been unanimously approved by the Boards of Directors of both companies, Expro shareholders will receive a fixed exchange ratio of 7.272 shares of Frank's for each share of Expro owned, subject to adjustment in specified circumstances. Upon the closing of the transaction, Expro shareholders will own approximately 65% of the merged entity, with Frank's shareholders owning approximately 35%. The transaction is structured to be tax-free to shareholders, and is expected to close in the quarter ending September 30, 2021,

subject to approval by Frank's and Expro shareholders and customary closing conditions, including required regulatory approvals. Upon closing, the combined company will assume the Expro Group name and be listed on the NYSE exchange under the symbol "XPRO". The combined company will retain the Frank's brand name for its well construction solutions.

The Mosing family representatives on the Frank's Board unanimously support the transaction. Expro shareholders representing approximately two-thirds of ownership have agreed to support the transaction.

(Emphasis in original).

31.     As indicated in the press release, the combined company board of directors ("Combined Company Board") will consist of nine members, including Individual Defendants Michael C. Kearney, D. Keith Mosing, and Robert W. Drummond, who were nominated by the Frank's Supervisory Board, and Individual Defendant Michael C. Kearney will serve as Chairman of the Combined Company Board.

32.     In connection with the Merger Agreement, Frank's, FICV and Mosing Holdings entered into an Amended and Restated Tax Receivable Agreement (the "A&R TRA") amends and restates the Original TRA. Pursuant to the A&R TRA, Frank's, FICV, and Mosing Holdings have agreed, among other things, to settle the Early Termination Payment obligations that would otherwise be owed to Mosing Holdings under the Original TRA as a result of the Merger in exchange for the payment by Frank's to Mosing Holdings of $15 million cash at the Closing and certain other contingent payments by Frank's to Mosing Holdings made in the future in the event the Combined Company realizes cash tax savings from tax attributes covered under the Original TRA during the ten year period following the Closing Date in excess of $18,057,000.

**II.      The Registration Statement Omits Material Information**

33.     In connection with the Proposed Transaction, Defendants filed a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement to ensure it did not contain any material

misrepresentations or omissions before it was filed and disseminated to the Company's shareholders. However, the Registration Statement misrepresents or omits material information necessary for the Company's shareholders to make an informed decision regarding the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

34.    First, the Registration Statement fails to adequately disclose the financial projections prepared by the Company's management for Frank's on a stand-alone basis. Specifically, the Registration Statement fails to disclose all of the underlying line-items used to calculate the Company's non-GAAP Adjusted EBITDA, including the Company's net income/(loss) projections.

35.    If a proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known – but it may not choose half-truths. Moreover, when a company discloses non-GAAP financial measures in a solicitation statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

36.    Second, the Registration Statement fails to provide sufficient information regarding the negotiations and evaluation of the Original TRA and the A&R TRA.

37.    As disclosed in the Registration Statement, the Original TRA and "Early Termination Payment presented an impediment to any change of control transaction, especially given the size of

such payment relative to Frank's recent market capitalization." Nevertheless, it appears that, in March 2020, following the simultaneous arrival of the COVID-19 pandemic, which slashed global demand for oil, and a supply surge instigated by a market-share fight between Saudi Arabia and Russia, both of which delivered a one-two punch to oil and gas producers and led to a collapse in oil prices, the Company's management abandoned its "Bolt-on Strategy" (to acquire one or more smaller companies) and instead focused on a large-scale transaction partner.  Notably, during this time, the Company's share price plummeted from a close of $5.71 per share on December 16, 2019 to an intraday low of $1.79 per share on March 11, 2020, before slightly recovering and closing at $2.09 per share on May 5, 2020.

38.     Thereafter, on May 6, 2020, the Company authorized management and Moelis to contact four-potential merger partners, including Expro. Shortly thereafter, on June 3, 2020, Frank's entered into a confidentiality agreement with Expro and the parties began their respective due diligence.

39.     Meanwhile, beginning on May 13, 2020, Individual Defendant Keith Mosing began selling significant amounts of shares on the open market:

| Transaction Date | Reported DateTime | Company | Symbol | Insider Relationship | Shares Traded | Average Price | Total Amount | Shares Owned | Filing |
|---|---|---|---|---|---|---|---|---|---|
| 2020-06-08 Sale | 2020-06-10 8:51 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director | 177,070 | $2.9011 | $513,698 | 1,977,243 (Indirect Direct) | View |
| 2020-06-05 Sale | 2020-06-09 8:32 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director | 177,070 | $2.6543 | $469,997 | 2,227,243 (Indirect Direct) | View |
| 2020-06-04 Sale | 2020-06-08 7:04 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director | 177,070 | $2.6543 | $469,997 | 2,664,124 (Indirect Direct) | View |
| 2020-06-03 Sale | 2020-06-05 5:03 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director | 236,166 | $2.1608 | $510,307 | 2,841,194 (Indirect Direct) | View |
| 2020-06-01 Sale | 2020-06-03 6:19 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director | 104,217 | $2.2009 | $229,369 | 3,077,360 (Indirect Direct) | View |
| 2020-05-26 Sale | 2020-05-28 7:19 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director | 214,598 | $1.976 | $424,046 | 3,181,577 (Indirect Direct) | View |
| 2020-05-20 Sale | 2020-05-22 3:52 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director | 157,318 | $2.052 | $322,813 | 3,396,175 (Indirect Direct) | View |
| 2020-05-18 Sale | 2020-05-20 7:05 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director | 166,345 | $2.1452 | $356,851 | 45,535 (Indirect Direct) | View |
| 2020-05-13 Sale | 2020-05-15 5:43 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director | 587,534 | $2.0539 | $1,206,747 | 3,712,225 (Indirect Direct) | View |
| 2018-08-27 Sale | 2018-08-29 4:02 pm | FRANK'S INTERNATIONAL N.V. | FI | Mosing D. Keith Director 10% Owner | 250,000 | $8.6671 | $2,166,766 | 1,870,264 (Indirect Direct) | View |

40.     Then, on October 22, 2020, Expro delivered an indication of interest for a stock-for-

stock transaction with Frank's wherein Expro shareholders would own 69% of the Combined Company and Frank's shareholders would own 31% of the Combined Company, *assuming no payments were made to Mosing Holdings under the Original TRA*. Apparently, "[i]n prior conversations, Expro's advisors had communicated that the equity split should be adjusted in favor of Expro by 0.1% for every $3 million paid to Mosing Holdings in settlement of the TRA obligations."

41.     However, the Registration Statement fails to disclose *any* information regarding the timing and nature of those "prior conversations," including, but not limited to, whether any member of the Mosing family was involved in those conversations and discussions. This information is material for Frank's shareholders to determine the propriety of the process that culminated in the Proposed Transaction, particularly considering the inherent conflicts of interest for the Mosing family members on the Supervisory Board (which supervises the Management Board). Indeed, the Company's counsel recognized these "conflicts of interest, specifically noting that under the Original TRA, the Mosing directors would benefit from accelerated payment under the Original TRA in the event of any transaction resulting in a change in control of Frank's" and, "[a]s a result,…recommended that the Frank's Supervisory Board establish the Special Committee comprised of independent directors to lead the negotiation of any strategic transaction with a counterparty, as well as any negotiation of TRA payments with Mosing Holdings."

42.     Third, and relatedly, the Registration Statement fails to disclose "Frank's projections for future liability for potential payments under the Original TRA" (the "Original TRA Projections") that were discussed by Frank's and Expro management on December 31, 2020. As noted above, under the Original TRA, the Early Termination Payment is "equal to the sum of all potential future Original TRA payments, calculated using valuation assumptions contained in the Original TRA." If this payment had been triggered on December 31, 2020, the Early Termination Payment would have been approximately $68 million. However, in connection with the Proposed Transaction, Mosing Holdings

has agreed to settle the agreement for a cash payment of *just $15 million*, plus other contingent payments in the event the Combined Company realizes cash tax savings from tax attributes covered under the Original TRA during the ten-year period following the Closing Date in excess of $18,057,000, which contingent payment mechanism *is not expected to be ever be triggered*. The Original TRA Projections are therefore material for shareholders' evaluation of the negotiations surrounding the Early Termination Payment and the conflicts faced by the Mosing family related thereto.

43.     <u>Fourth</u>, the Registration Statement fails to disclose material information regarding the Company's negotiations with Expro and Party B.

a)     For example, the Registration Statement fails to disclose the terms of Party B's October 22, 2020 indication of interest. Rather, the Registration Statement merely states that, "[w]ith respect to Company B's proposal, the Frank's Supervisory Board noted that Company B's shareholders would own a significant portion of the Combined Company and that the Combined Company would be managed by Company B's management team, but the consideration being proposed implied no premium for Frank's shareholders."

b)     Comparatively, the Registration Statement discloses that Expro's October 22, 2020 indication of interest proposed a transaction whereby "Expro shareholders would own 69% of the Combined Company and Frank's shareholders would own 31% of the Combined Company, assuming no payments were made to Mosing Holdings under the Original TRA," and *does not discuss the implied control premium or governance matters envisioned by Expro's proposal.* Notably, the Registration Statement acknowledges that, throughout their discussions regarding a strategic combination transaction, "any leverage from

such a combination as well as management and governance of the resulting combined business was a matter of significant concern for the [Company's] directors."

c)    Then, on November 4, 2020, the Registration Statement states that the Company informed Party B that, given the percentage ownership that Frank's shareholders would receive in the pro forma company relative to Company B's shareholders and given that Company B's proposal provided that the Combined Company would be managed by Company B's management team, Frank's would require a control premium.

d)    Again comparatively, on November 11, 2020, Expro reiterated its proposed 69%/31% equity split, assuming no payment made pursuant to the Original TRA, but the Registration Statement does not disclose the implied control premium or whether Expro's proposals provided for any governance arrangements.

e)    Thereafter, the Company continued to engage in negotiations with Expro while it delayed discussions with Party B.  Indeed, it wasn't until December 4, 2020 that the Company re-engaged with Party B. On December 9, 2020, the Special Committee held a meeting wherein it discussed Company B's continued proposed "market-based equity split without a premium" before *formally* agreeing to negotiate with Expro on an exclusive basis. Notably, even after the exclusivity period with Expro expired without a deal, it does not appear that the Company attempted to re-engage with Party B.

f)    Accordingly, more information regarding the terms of Expro's and Party B's October 22, 2020 proposals – including but not limited to the implied valuations and/or premiums of each proposal and any provision relating to the combined

company's proposed management and/or governance – must be disclosed to Frank's shareholders so that they may evaluate the propriety of the negotiations that culminated in the Proposed Transaction.

44. <u>Fifth</u>, the Registration Statement fails to disclose sufficient information regarding Moelis and its potential conflicts of interest. Specifically, the Registration Statement fails to disclose (1) the compensation Moelis expects to receive for its advisory services to the Company in connection with the Proposed Transaction, including the contingent portion thereof; and (2) whether Moelis has previously provided services to and/or received compensation from Mosing Holdings, the Mosing family, and/or any affiliates thereof, and/or Oak Hill Advisors, L.P. (a significant shareholder of Expro) and/or its affiliates.

\* \* \*

45. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national

securities exchange or otherwise, in contravention of such rules and regulations as the Commission

may prescribe as necessary or appropriate in the public interest or for the protection of investors, to

solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of

any security (other than an exempted security) registered pursuant to section 78l of this title." 15

U.S.C. § 78n(a)(1).

48.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act,

provides that proxy communications shall not contain "any statement which, at the time and in the

light of the circumstances under which it is made, is false or misleading with respect to any material

fact, or which omits to state any material fact necessary in order to make the statements therein not

false or misleading."  17 C.F.R. § 240.14a-9.

49.     The omission of information from a registration statement will violate Section 14(a)

and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

50.     Defendants have issued the Registration Statement with the intention of soliciting the

Company's public common stockholders' support for the Proposed Transaction. Each of the

Individual Defendants reviewed and authorized the dissemination of the Registration Statement,

which fails to provide critical information regarding the Company's financial projections, potential

conflicts of interest faced by the Company's financial advisor and certain members of the Board, and

the process that culminated in the Proposed Transaction.

51.     In so doing, Defendants made untrue statements of fact and/or omitted material facts

necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose

such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent,

as they had reasonable grounds to believe material facts existed that were misstated or omitted from

the Registration Statement, but nonetheless failed to obtain and disclose such information to the

Company's shareholders although they could have done so without extraordinary effort.

52.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. Indeed, the Individual Defendants were privy to and had knowledge of the Company's financial projections and the details surrounding the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

53.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of the Company's financial projections.

54.     Frank's is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

55.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law.

Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.     The Individual Defendants acted as controlling persons of Frank's within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Frank's, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

60.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

    D.      Granting such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 19, 2021

**OF COUNSEL**

**KAHN SWICK & FOTI, LLC**
Michael Palestina
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: 504.455.1400
Direct: 504.648.1843
Facsimile: 504.455-1498
Email: michael.palestina@ksfcounsel.com

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*